[Civ. No. 53542. Second Dist., Div. Three. Jan. 30, 1979.]

VERDUGO HILLS HOSPITAL, INC., Plaintiff and Respondent, v. DEPARTMENT OF HEALTH et al., Defendants and Appellants.

958

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, John J. Klee, Jr., and John Huntington, Assistant Attorneys General, Anne S. Pressman, James E. Ryan and Barbara M. Motz, Deputy Attorneys General, for Defendants and Appellants.

Memel, Jacobs, Pierno & Gersh, Sherwin L. Memel, Martin J. Thompson and Gerald W. Connor for Plaintiff and Respondent.

## OPINION

COBEY, J.—The Department of Health and its director appeal from a judgment in administrative mandamus directing in effect, among other things, that the department issue to Verdugo Hills Hospital, Inc., located in Glendale, California, a certificate of exemption from the requirement of a certificate of need for its lease-purchase of a piece of diagnostic equipment known as a computerized tomographic full-body scanner costing $595,000.[1] The appeal lies. (Code Civ. Proc., §§ 904.1, subd. (a), 1094.5, subd. (f).)

We propose to affirm the judgment for reasons that follow.

### BACKGROUND

*A. The Statute and the Regulation*

Effective September 9, 1976, the Legislature amended the health planning part of the Health and Safety Code (div. I, pt. 1.5, §§ 437-438.7)[2] extensively. (See Stats. 1976, ch. 854, pp. 1931-1956.) One of these amendments provided that projects requiring a certificate of need issued by the department included the initial lease by a hospital of diagnostic equipment with a value in excess of $150,000. (§ 437.10, subd. (d).) Another amendment, however, provided exemption by the department of such projects from the requirement of a certificate of need if (1) prior to September 9, 1976, the health facility had, among other things, committed or incurred a financial obligation certified to be 10 percent of the cost of the project or $75,000, whichever was less, and (2) the project could not be terminated "without substantial economic loss" to the facility. (§ 437.11, subd. (a)(1), (2).)

On or about November 8, 1976, the department promulgated an emergency regulation (Cal. Admin. Code, tit. 22, § 90603) in which it defined in subdivision (e)(2)[3] of this regulation the statutory term "substantial economic loss" as being, among other things, an amount

---

[1] A C.T. Scanner provides a 360 degree X-ray picture of a selected cross-section of the body. It reveals differences in tissue density and this pinpoints injured or diseased areas. It is particularly useful in the handling of emergency accident cases.

[2] All statutory references hereafter are to Health and Safety Code sections unless otherwise indicated.

[3] The pertinent portion of this subdivision of this regulation is as follows:
"(2) The project cannot be terminated without substantial economic loss of funds

already committed or incurred equal to 10 percent of the certified cost estimate of the project.

## B. *The Instant Proceeding*

On or about November 5, 1976, the hospital applied to the department for exemption of its pre-September 9, 1976, lease-purchase, of the aforementioned C.T. scanner from the requirement of a certificate of need.[4] On December 21, 1976, the department orally informed the hospital that it intended to deny the hospital's application, but that a hearing thereon would be held on December 30, 1976. Meanwhile, on or about December 27, 1976, the hospital received the department's written notice of its proposed denial of the application on the basis of its preliminary finding that the hospital had not demonstrated that if its project were terminated, it would suffer "substantial economic loss" as defined in the already quoted subdivision of regulation 90603.

At the just-mentioned December 30 hearing, the department took the position that this was the only basis for its proposed denial of the requested exemption. At the hearing, however, the hospital demonstrated that it would suffer a loss of $16,482 upon the premature termination of its acquisition[5] and that this loss represented 13 percent of the hospital's net operating profit for its last fiscal year. Nevertheless, the department, on January 7, 1977, formally denied the hospital's application for exemption on the sole basis that the hospital had not met the "substantial economic loss" requirement for exemption as defined in the already quoted portion of the applicable regulation.

committed or incurred by the applicant prior to September 9, 1976. For purposes of this section, substantial economic loss includes loss which: (A) Is an amount already committed or incurred equal to ten percent of the certified cost estimate for the project. (B) Is neither refundable nor avoidable. (C) Is not properly chargeable as an expense of operation and maintenance. (D) Cannot be mitigated or liquidated below the amount set forth in (A) above. (E) Cannot be reduced by the resale of equipment or other goods to an amount below the amount set forth in (A) above. (F) Does not include the loss of future revenue or good will."

[4] The hospital ordered the scanner on March 25, 1976, at which time it made a downpayment of $15,000. It made an additional payment of $1,648 on August 31, 1976, and then changed its method of acquisition of the equipment on September 2, 1976, from a straight purchase to a lease-purchase.

[5] We cannot reconcile from the record on appeal this small difference ($16,648 versus $16,482) in the loss claimed.

Thereafter the hospital unsuccessfully petitioned the department, pursuant to Government Code, section 11426, for repeal of the challenged portion of regulation 90603. It then, on May 26, 1977, initiated the administrative mandamus proceeding before us in which it also sought declaratory relief. This proceeding culminated in a judgment in administrative mandamus in which, among other things, the hospital was awarded attorneys' fees in the amount of $1,500.

## CONTENTIONS

The department contends that (1) the validity of a departmental regulation may not be challenged in an administrative mandamus proceeding; (2) the challenged portion of the regulation is valid; (3) $16,482 in loss is not substantial as a matter of law; (4) the trial court erred in ordering the issuance of a certificate of exemption; and (5) it likewise erred in awarding attorneys' fees.[6]

## DISCUSSION

■ The validity of an administrative regulation, in whole or in part, as applied to a petitioner in an administrative mandamus proceeding, may be challenged therein by that petitioner where the basis of the challenge is that the regulation or some portion thereof is not a reasonable interpretation of the statute within the meaning of Govern-

---

[6]At oral argument counsel for the hospital quite properly brought to this court's attention, pursuant to rule 977, California Rules of Court, in support of the hospital's claim that the department and its director were collaterally estopped to relitigate certain issues in this case, an unpublished opinion of another local division of this statewide court in the case entitled *Memorial Hospital of Glendale* v. *Director of the Department of Health* (2 Civ. No. 53559, filed Nov. 17, 1978). (See *People* v. *Manson* (1976) 61 Cal.App.3d 102, 165 [132 Cal.Rptr. 265].) More specifically, the hospital now contends that this decision collaterally estops the department and its director from relitigating in this case all but the last of the five contentions stated above as each of the first four was determined on its merits adversely to the department and its director in the *Memorial Hospital* case. Our inspection of this decision reveals that it does involve the validity of the identical portion of the departmental regulation that is now before us and that the first four issues herein were decided therein on their merits and essentially on much the same factual basis. Consequently the hospital's position appears to have merit. (See Rest., Judgments, §§ 68, 70; *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810-813 [122 P.2d 892]; *Vanguard Recording Society, Inc.* v. *Fantasy Records, Inc.* (1972) 24 Cal.App.3d 410, 417 [100 Cal.Rptr. 826].)

Nevertheless we will proceed to decide on their merits these same four issues and the one remaining issue as well and then publish our opinion herein because we believe such publication will provide better notice to those affected by the regulation of its partial invalidity and should act as something of a deterrent to further administrative misinterpretation of statutes.

ment Code, section 11374[7] and is therefore void. (See, for the effect of noncompliance with this statute, *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].) ■ Code of Civil Procedure, section 1094.5, states that the judicial inquiry thereunder extends to the question, among other questions, whether there was any prejudicial abuse of discretion and such abuse may be established if, among other things, the administrative agency has not proceeded in the manner required by law. Proceeding pursuant to an invalid regulation is not proceeding in the manner required by law. (*Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 92 [88 Cal.Rptr. 907, 43 A.L.R.3d 537]; *Ross Gen. Hosp., Inc.* v. *Lackner* (1978) 83 Cal.App.3d 346, 351 [147 Cal.Rptr. 801].)

■ The regulation's definition of the statutory term "substantial economic loss" is unreasonable as a matter of law. It defines this statutory term largely in the language of the other substantive statutory requirement for a certificate of exemption—namely, that of prior financial obligation.[8] We perceive nothing in the pertinent purpose of the legislation—the prevention of superfluous hospital services (see *Bakersfield Community Hosp.* v. *Department of Health* (1977) 77 Cal.App.3d 193, 197-198 [142 Cal.Rptr. 773])—which suggests this approximate merger of these two substantive statutory requirements. Indeed, there is no apparent reason for this administrative requirement that an applicant for exemption should have lost essentially his entire qualifying financial investment in his project in order to obtain exemption for the project. In making this approximate merger of these two substantive statutory requirements, the regulation is plainly inconsistent with the statute since the statute keeps them separate and distinct.

The hospital's loss of $16,482 in the event it has to cancel its acquisition of the C.T. scanner is substantial as a matter of law. It represents 13 percent of its net operating profit for the last fiscal year.

[7]This statute in pertinent part reads: "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute."

[8]The two statutory substantive requirements for exemption are: "(1) The applicant has, prior to the effective date of this section, committed or incurred a financial obligation, including any obligation payable by force account, which is certified by a licensed architect or engineer to be 10 percent of the cost of the total project, or seventy-five thousand dollars ($75,000), whichever is less; and (2) The project cannot be terminated without substantial economic loss to the applicant; . . . ." (Health & Saf. Code, § 437.11, subd.(a).)

The portion of the regulation at issue leaves out only the $75,000 lesser alternative. This omission is without consequence in the situation before us.

In construing the statute, the adjective "substantial" should be given its ordinary or commonly understood meaning. (See *County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 642 [122 P.2d 526].) This meaning includes the notion that something substantial is something considerable and of real worth, value or effect. (See The Random House Dict. of the English Language (unab. ed. 1966) p. 1418.) The economic loss at issue clearly falls within this definition.

The trial court did not err in directing the issuance of a certificate of exemption. It concluded as a matter of law that the portion of the departmental regulation preventing such issuance was legally invalid and likewise, as a matter of law, the hospital would suffer the requisite "substantial economic loss" if its acquisition of the C.T. scanner was thwarted. Under these circumstances, such an order was proper. (See *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 677 [131 Cal.Rptr. 789, 552 P.2d 749]; *Ross Gen. Hosp., Inc.* v. *Lackner, supra,* 83 Cal.App.3d 346, 354.)

■ Similarly, the trial court did not err in awarding the hospital attorneys' fees in the amount of $1,500, pursuant to Government Code section 800. This section authorizes, with exceptions here immaterial, such an award in any civil action to review the determination of an administrative proceeding where it is shown that the determination was the result of arbitrary or capricious action by a public entity and the complainant is personally obligated to pay such fees. The hospital sought such fees in its petition and the trial court expressly found that the department and the director's action in relying upon a patently invalid regulation, as its sole basis for denying the requested exemption, was arbitrary and capricious within the meaning of this statute. We have already indicated that we can perceive no valid reason for the department's misinterpretation of the governing statute in the respect challenged. An arbitrary act is one done without any apparent reason therefor. (See *Bedford Investment Co.* v. *Folb* (1947) 79 Cal.App.2d 363, 366 [180 P.2d 361].)

DISPOSITION

The judgment under appeal is affirmed.

Potter, Acting P. J., and Allport, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 26, 1979.