Filed 2/27/24  Ford v. San Joaquin County In-Home Support Services CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| TAMMY FORD, | C096203 |
| Plaintiff and Appellant, | (Super. Ct. No. STKCVUJR20190001718) |
| v. | |
| SAN JOAQUIN COUNTY IN-HOME SUPPORT SERVICES, | |
| Defendant and Respondent. | |

Pro per plaintiff Tammy Ford was employed to provide in-home supportive services to her granddaughter from 2007 until granddaughter died in 2015.  Ms. Ford claims defendant San Joaquin County In-Home Supportive Services owes her wages for services she provided.  After receiving an adverse decision from the Labor Commissioner, she sought de novo review in the superior court.  The superior court also found that defendant did not owe her wages and entered judgment in defendant's favor.

1

Ms. Ford appeals that judgment and challenges determinations and actions of defendant. We affirm, concluding Ms. Ford's challenges are either untimely or lack merit.

Statutory citations are to the Welfare and Institutions Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

Ms. Ford became an In-Home Supportive Services (IHSS) provider for granddaughter in 2007. As early as 2010, the services defendant authorized for granddaughter included zero hours of protective supervision or paramedical services. In May 2012, defendant issued a notice changing granddaughter's authorized services effective May 1, 2012, but leaving unchanged the zero hours of protective supervision and paramedical services. Subsequent notices included 4.5 hours of paramedical services per week but retained the zero hours for protective supervision effective June 1, 2013, through August 31, 2014.

Effective September 1, 2014, defendant decreased the authorized hours for feeding, increased the authorized hours for various other services, and left unchanged the zero hours for protective supervision and 4.5 hours for paramedical services. Defendant informed Ms. Ford of the approved hours via notice dated August 8, 2014 (the August 2014 notice) following a social worker's visit to Ms. Ford's home. Ms. Ford was present for the visit as granddaughter was attending school. The needs assessment form the social worker completed for the visit designated a funding code of "2K-CFCO." Other records indicate that granddaughter was moved from the personal care services program to the Community First Choice Option Program effective September 1, 2014.

Ms. Ford requested a hearing before the State Department of Social Services (the department) challenging the August 2014 notice. Her request identified several issues, including a challenge to the paramedical services on the grounds that the social worker never submitted the requisite forms to granddaughter's physician. Following the hearing,

2

the department ordered defendant to rescind the August 2014 notice, conduct a reassessment of granddaughter's needs with granddaughter present, and issue a new notice.

Defendant conducted a reassessment in November 2014 and issued a new notice in December 2014 increasing the authorized hours for various services for a total number of 191 hours and 4 minutes per month ("the December 2014 notice"). Defendant did not increase the hours for paramedical services or protective supervision.

Ms. Ford appealed the December 2014 notice and disputed defendant's determination of needs for several services including paramedical services and protective supervision. Specific to paramedical services and protective supervision, the social worker testified that the necessary forms were sent but not returned while Ms. Ford testified that granddaughter's medical providers stated they never received the forms. In June 2015, the department ordered defendant to (1) increase the number of hours for domestic services, meal preparation, meal cleanup, laundry, and shopping effective September 1, 2014; (2) evaluate any adjustments to the hours authorized for all categories to ensure that services provided by a regional center were not considered an alternative resource effective September 1, 2014; and (3) continue evaluating granddaughter's need for paramedical services and protective supervision, including obtaining and receiving the respective forms from her medical providers.

In July 2015, defendant issued a new notice authorizing 283 hours of services effective September 1, 2014, including protective supervision hours and additional paramedical service hours. Ms. Ford filed a rehearing request, which the department denied in December 2015. The department informed Ms. Ford that 283 hours of service was the maximum allowable hours under the IHSS program and instructed her to petition the superior court if she was dissatisfied with the determination.

In August 2016, Ms. Ford filed a wage claim with the Labor Commissioner for services she rendered to granddaughter from August 11, 2013, through August 11, 2014,

3

seeking eight dollars per hour through June 30, 2014, and nine dollars per hour for the remainder. The Labor Commissioner issued a decision in defendant's favor in December 2018, concluding that Ms. Ford was properly paid for the hours defendant approved and that the hours for which she sought compensation were not approved by defendant and therefore not owed. Ms. Ford appealed the decision in the San Joaquin County Superior Court.

Following a bench trial, the trial court entered judgment in favor of defendant, finding as follows: (1) as to defendant's notices issued before the August 2014 notice, Ms. Ford was not authorized to perform protective services, was paid for the authorized paramedical services, and failed to timely challenge defendant's determinations regarding those services; and (2) as to the other notices, evidence established that defendant properly followed the direction from the final decisions and implemented the necessary changes to the relevant time periods.

Ms. Ford timely appealed the judgment.

DISCUSSION

The IHSS program enables aged, blind, or disabled individuals to avoid institutionalization by remaining in their homes with proper supportive services. (§ 12300 et seq.) Those supportive services are defined to include domestic services, protective supervision, and paramedical services.

There are four pathways to receiving IHSS benefits: (1) the original IHSS program (§ 12300 et seq.); (2) the Medi-Cal personal care services program (§ 14132.95); (3) the IHSS Plus waiver program (§ 14132.951); and (4) the Community First Choice Option Program (§ 14132.956). (*Cal. Health Care Foundation, In-Home Supportive Services (IHSS) 101: Opportunities and Challenges Under CalAIM* (May 2023) <https://www.chcf.org/wp-content/uploads/2023/05/IHSSOppsChallengesCalAIM.pdf> [as of Feb. 27, 2024], archived at: <https://perma.cc/9Y98-SR2H>.) IHSS is overseen by the department and administered by county agencies like defendant. (*Norasingh v.*

4

*Lightbourne* (2014) 229 Cal.App.4th 740, 744.)  The county agencies "process applications for [In-Home Supportive Services] services, assess applicants' service needs, authorize services and service hours, . . . [at least annually] reassess recipients' needs," and either pay the provider of the services, or pay the recipient who hires the provider. (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2018) 24 Cal.App.5th 574, 579; § 12301.1.)  An IHSS provider is limited to 283 hours of compensation per month. (*Reilly v. Marin Housing Authority* (2020) 10 Cal.5th 583, 601; Department, Manual of Policies and Procedures (Department MPP) § 30-765.111 (Apr. 14, 2000) <https://www.cdss.ca.gov/Portals/9/Regs/ssman3.pdf> [as of Feb. 27, 2024], archived at: <https://perma.cc/9MXY-9TL8>.)

County determinations with respect to IHSS benefits are reviewable by hearing before the department.  (*Norasingh v. Lightbourne, supra*, 229 Cal.App.4th at p. 745.)  If the claimant received an adequate and language-compliant notice of the county action, the claimant must file a request for hearing within 90 days after the notice was mailed or given to the claimant, unless (1) good cause exists and the request is filed within 180 days or (2) other "principles of equity jurisdiction" apply.  (Department MPP § 22-009 (June 12, 2018) <https://www.cdss.ca.gov/Portals/9/Regs/4CFCMAN.pdf> [as of Feb. 27, 2024], archived at: <https://perma.cc/EZ9Y-QM7P>; § 10951, subds. (a) & (d).)  "Good cause" means a substantial and compelling reason beyond the party's control, considering the length of the delay, the diligence of the party making the request, and the potential prejudice to the other party.  (§ 10951, subd. (c).)  If the claimant does not prevail in the administrative process and seeks to challenge the decision, the claimant's exclusive remedy is to file a writ of mandate petition in the superior court within one year after receiving notice of the department's final decision.  (*K.I. v. Wagner* (2014) 225 Cal.App.4th 1412, 1420, citing § 10962.)

Here, as to the hours Ms. Ford rendered before July 1, 2014, the superior court found that Ms. Ford "was not authorized to perform protective services and was paid for

the paramedical services which were authorized." Ms. Ford does not dispute these findings, and we have no basis to find them unsupported by substantial evidence. (*Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 561 [standard of review].) Instead, Ms. Ford appears to argue that she *should have been authorized* to perform protective supervision, among other services, "ever since January of 2010" or at least since April 2012, citing a form granddaughter's physician completed at that time. We conclude this claim is untimely.

The record does not indicate that Ms. Ford timely challenged defendant's authorizations for the pre-July 1, 2014 period. Defendant issued notices as to that period as late as July 16, 2013, but the record indicates Ms. Ford did not raise concerns until after the August 2014 notice, exceeding both the 90- and 180-day time limits for the pre-July 1, 2014 period. (§ 10951, subd. (a).) Nor does the record suggest that the notices were inadequate, that Ms. Ford provided good cause for her delay, or that principles of equity should apply to extend the deadlines. (§ 10951, subds. (a) & (b).) Ms. Ford now contends she never challenged the relevant notices because granddaughter's reassessments occurred in April 2012. This reasoning does not supply good cause or a basis for equity. As a result, we cannot reach the merits of her claims regarding the period before July 1, 2014, including her claims that defendant did not properly assess granddaughter for protective supervision or that granddaughter's provider approved protective supervision in 2012. (See *Oliva v. Swoap* (1976) 59 Cal.App.3d 130, 135 [exhaustion of an administrative remedy provided by statute is a jurisdictional prerequisite to the courts].)

As to Ms. Ford's claims for services she rendered on and after July 1, 2014, we are similarly unable to reach their merits. After Ms. Ford's administrative appeal of the September 2014 and December 2014 notices, the department ordered defendant to make various changes effective September 1, 2014, and to continue evaluating granddaughter's need for paramedical services and protective supervision. Defendant then authorized the

6

maximum 283 hours of services, including protective supervision hours and additional paramedical service hours, effective September 1, 2014. Following that authorization, the department denied Ms. Ford's rehearing request. Ms. Ford did not file an administrative mandamus petition under Code of Civil Procedure section 1094.5 within one year, the exclusive remedy for challenging the department's decision. (§ 10962.) And she provides no basis for us to conclude that her choice to file a claim with the Labor Commissioner satisfies this requirement. We see no authority suggesting that the Labor Commissioner has the power to change the hours that defendant or the department authorizes under the IHSS program. Because Ms. Ford's appeal is limited to determining whether defendant properly authorized granddaughter's services or Ms. Ford's hours of compensation and not whether defendant paid her for the authorized services, we conclude it is untimely. (See *Kupka v. Board of Administration* (1981) 122 Cal.App.3d 791, 794 [proceeding for writ of mandate barred if not commenced within the applicable limitation period].)

Ms. Ford's separate contention that the trial court erred by refusing to admit relevant evidence fails for lack of evidentiary specificity and legal argument: Ms. Ford does not specify what evidence she unsuccessfully sought to admit, nor does she argue how the court erred. (See *Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 391 [challenge to evidentiary rulings forfeited where opening brief does not identify distinct evidentiary rulings or provide legal argument as to why the rulings were wrong].) Her contention, including her claim in reply that the trial court admitted only two exhibits of her case, is refuted by the record showing that the trial court admitted all 64 of Ms. Ford's exhibits.

Lastly, Ms. Ford takes issue with the department's transition of granddaughter from the Medi-Cal personal services care program to the Community First Choice Option Program. But her claims of material alteration of medical records, false statements, and improper notice lack sufficient analysis and citation to authority. (See *United Grand*

7

*Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)  And her implied contention that the Community First Choice Option Program reduced granddaughter's benefits or Ms. Ford's authorized hours of compensation has no basis.  The Community First Choice Option program was made available under the federal Patient Protection and Affordable Care Act in 2010 and permits participating states to provide "home and community-based . . . services" and supports to eligible individuals with intellectual and developmental disabilities.  (42 U.S.C. § 1396n(k)(1).)  Participating states receive an increased level of federal reimbursement.  (42 U.S.C. § 1396n(k)(2).)  Ms. Ford provides no authority suggesting that defendant's transition of granddaughter to the Community First Choice Option Program reduced granddaughter's services or hours or otherwise significantly affected granddaughter's receipt of services.  Thus, we see no grounds for Ms. Ford to challenge granddaughter's transition.  (See *Madrid v. McMahon* (1986) 183 Cal.App.3d 151, 156 [test for whether an agency action is subject to challenge in a hearing is "whether it has a significant effect on the claimant's application for or receipt of the aid or other service provided by the county agency"].)

DISPOSITION

The judgment is affirmed.  In the interests of justice, each party shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


_/s/_____
MESIWALA, J.


We concur:


_/s/_____
EARL, P. J.


_/s/_____
ROBIE, J.